FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ JAN 1 0 2012 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
MELIEK SANDERS and COREY PHILLIPS,

Plaintiffs,

-against-

THE CITY OF NEW YORK, NATHANIE
RAY, and MICHAEL RAKEBRANDT,

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**COMPLAINT**

CV 12 0113

**PLAINTIFFS DEMAND
A TRIAL BY JURY**

BLOCK, J.          BLOOM, M.J

Plaintiffs Meliek Sanders and Corey Phillips, by their attorneys, Reibman &

Weiner, as and for their Complaint, hereby allege as follows, upon information and belief:

## PARTIES, VENUE and JURISDICTION

1.      At all times hereinafter mentioned plaintiff Meliek Sanders was an adult

male resident of Kings County, within the State of New York.

2.      At all times hereinafter mentioned plaintiff Corey Phillips was an adult

male resident of Kings County, within the State of New York.

3.      At all relevant times hereinafter mentioned, defendant City of New

York ("New York City"), was and is a municipal corporation duly organized and existing

under and by virtue of the laws of the State of New York and acts by and through its

agencies, employees and agents, including, but not limited to, the New York City Police

Department ("NYPD"), and their employees.

4.      At all relevant times hereinafter mentioned, defendant Nathaniel Ray,

Shield 2299, was employed by the City of New York as a detective with the NYPD.  Ray is

sued herein in his official and individual capacities.

5.      At all relevant times hereinafter mentioned, defendant Michael Rakebrandt, 31009, was employed by the City of New York as a Police Officer with the NYPD.  Rakebrandt is sued herein in his official and individual capacities.

6.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

7.      Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in the Eastern District of New York, where the plaintiffs and defendant City of New York reside, and where the actions complained of herein occurred.

8.      That plaintiffs timely served Notices of Claim on the municipal defendant and complied with all conditions precedent to commencing an action under state law.

9.      At least thirty days have elapsed since service of plaintiffs' Notices of Claim and adjustment and payment thereof has been neglected or refused.

10.     That the within action has been initiated within one year and ninety days of the happening of the events of which plaintiffs complain.

## RELEVANT FACTS

### The Coney Island Avenue Robbery

11.     On August 8, 2009, at or about 6:00 a.m., two black males attempted a gunpoint robbery of a convenience store located inside a gas station at 418 Coney Island Avenue in Kings County (the "Coney Island Avenue robbery").  There were two civilian employees at the location at the time.

2

12.    Defendant Rakebrandt walked into the store during the robbery.

Apparently realizing that a crime was in progress, Rakebrandt drew his handgun and ordered

one man to lie down on the floor. Both men fled the scene and escaped from Rakebrandt.

13.    During the struggle, Rakebrandt tore off a piece of one of the robbers'

hoods.

14.    The robbery was captured on video by several different video cameras

stationed inside and outside the first location.

15.    As is evident from the video, the two would-be robbers were black

males wearing grey hooded sweatshirts.

16.    Neither of the robbers captured on the tape looked like either Meliek

Sanders or Corey Phillips.

17.    Meliek Sanders is six feet and six inches tall, while Corey Phillips is

about five feet and nine inches tall, meaning that Mr. Sanders is a full nine inches taller than

Mr. Phillips.

18.    Both of the would-be robbers appear to be about the same height as

the two employees at the first location, as well as various customers captured on the video.

Both robbers appear to be under six feet in height.

**The Neptune Avenue Robbery**

19.    Approximately thirty minutes later, at about 6:30 a.m., a single black

male entered and robbed a convenience store located at 1620 Neptune Avenue in Kings

County (the "Neptune Avenue robbery"). There was one employee at this location at the

3

time of the attempted robbery.

20.     This video was also captured on video tape.

21.     The man captured on the video tape from the Neptune Avenue robberty was clearly neither Meliek Sanders nor Corey Phillips.

22.     Defendant Ray, who was assigned to the Brooklyn Robbery Squad, considered both robberies to be part of a larger pattern of at least 8 robberies and that the men who committed the Coney Island and Neptune Avenue robberies were driving a silver Chrysler sedan.

**The Arrest of Meliek Sanders**

23.     On August 12, 2009, Sanders and a friend were driving in plaintiff's silver Chrysler when they were stopped by members of the NYPD, ostensibly for a moving violation.

24.     Meliek Sanders holds the title to the car but the vehicle is insured under Corey Phillips's name.

25.     Both men were then arrested and transported to the 60 precinct station house, where Sanders was questioned by Ray about the robberies, his vehicle, and grey hooded sweatshirts.

26.     Ray falsely claimed that Sanders made various statements to him, alleging specifically that Sanders stated that he has friends who commit robberies and wear grey hoodies. Ray's claim was false, and Ray knew it to be false, as Sanders never made any such statements to Ray, or any other member of the NYPD, nor was it reasonable for Ray to

4

believe that Sanders had made such a statement.

27.     Mr. Sanders was then placed in a lineup consisting of himself and several homeless fillers, none of whom was over six feet tall.

28.     That lineup was viewed by Rakebrandt who identified Sanders as one of the two robbers at the Coney Island Avenue robbery.  As Sanders was plainly not either of the perpetrators, Rakebrandt's identification can only be understood as a byproduct of Ray's coaching and input, which rendered the positive identification a meaningless farce.

29.     Sanders was also placed in a lineup in front of the two civilian employees who were witnesses to the Coney Island Avenue robbery.  Neither of these men identified Sanders as one of the two robbers.

30.     There was no forensic evidence placing Sanders at the scene of either robbery or linking him to either robbery.

31.     Notwithstanding the fact that he was more than six inches taller than either of the robbers on the video taken at the Coney Island Avenue location and was not identified by either of the robbery victims, Sanders was arrested by or at the direction of defendant Ray on charges that he participated in the Coney Island Avenue robbery.

**The Arrest of Corey Philips**

32.     On August 13, 2009, around midday, Corey Phillips was driving his vehicle when he was stopped by several officers and arrested.  He was transported to the 60 precinct station house, and then taken to another location where he was questioned by defendant Ray.

5

33.     There was no forensic evidence placing Phillips at the scene of either robbery or linking him to either robbery.

34.     Mr. Phillips was then placed in a series of lineups consisting of various fillers who bore little resemblance to himself.

35.     Rakebrandt viewed the lineup and, again with coaching and input from Ray, identified Phillips as the other man from the Coney Island Avenue robbery. Neither of the store employees from the Coney Island Avenue location could identify Phillips.

36.     Khan Hammad, a civilian present at the Neptune Avenue robbery, also with coaching and input from Ray, identified Phillips from the Neptune Avenue robbery.

37.     Neither Rakebrandt nor Hammad could reasonably have identified Phillips from either of the two robberies as the videos from both locations demonstrated that he was not the perpetrator. Accordingly, the positive identification of Phillips by Rakebrandt and Hammad can only be understood as a byproduct of Ray's coaching and input, which rendered the process a meaningless farce.

38.     Based solely on the above identifications, Corey Phillips by or at the direction of defendant Ray on charges that he participated in the Coney Island Avenue and Neptune Avenue robberies

39.     Rakebrandt's identification was entirely worthless as it was contradicted by the video of the incident, which made clear that neither Sanders nor Phillips was present. This was particularly so since both of the robbers depicted in the video were under six feet in height.

6

**The Prosecution of the Plaintiffs**

40. Defendant Ray determined that both robberies were part of a larger pattern of robberies that had occurred and were still unsolved.

41. By charging plaintiffs with these two robberies, Ray would be able to claim that all of these unsolved robberies were now closed, regardless of whether there was actually any evidence linking either plaintiff to any of the robberies.

42. Ray manipulated and interfered with the lineup process in order to obtain false positive identifications and fabricated plaintiff Sanders' supposed statement in order to create a basis for the arrest and prosecution of the two plaintiffs.

43. Thus, notwithstanding the absence of any forensics evidence linking either plaintiff to either robbery, and despite the exculpatory video evidence from both robberies, plaintiff Sanders was indicted on charges relating to the Coney Island Avenue robbery and plaintiff Phillips was indicted on charges relating to both the Coney Island and Neptune Avenue robberies.

44. The indictments were grounded on the identifications by Rakebrandt and Hammad.

45. Bail was set at $50,000 for plaintiff Sanders and $85,000 for plaintiff Phillips. Neither plaintiff was able to post bail and both were remanded to the municipal defendants' custody at Rikers Island.

46. Eventually, after multiple requests by plaintiffs, the DNA found on the piece of the hood that was torn off during the Coney Island Avenue robbery was compared

7

to that of the plaintiffs.

47.     The DNA tests confirmed that neither plaintiff's DNA was on the hood.

48.     Finally, in July 2010, after eleven months of incarceration at Rikers Island, the prosecution agreed to lower both plaintiffs' bail and Sanders and Phillips were each released shortly thereafter.

49.     The plaintiffs continued to appear in Court until December 7, 2010, at which time the prosecution moved to dismiss all charges against both plaintiffs and the indictment was dismissed and terminated in plaintiffs' favor.

50.     The individual defendants intentionally and deliberately gave false statements and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required.

51.     That at all times relevant herein, the defendants, were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

52.     Plaintiffs repeat the allegations contained in paragraphs "1" through "51" above as though stated fully herein.

53.     Defendants willfully and intentionally seized, searched, detained and arrested plaintiffs without probable cause, and without a reasonable basis to believe such

8

cause existed.

54.    Defendants willfully and intentionally subjected plaintiffs to criminal process through the making of false or materially misleading statements and without probable cause to believe that these plaintiffs could be successfully prosecuted, and did so without a reasonable basis to believe that such conduct was appropriate, reasonable, lawful or necessary.

55.    By so doing, the individual defendants, individually and collectively, subjected the plaintiffs to false arrest and imprisonment, unlawful searches of person and property, denial of due process and a fair trial, malicious prosecution and malicious use and abuse of process, and thereby violated, conspired to violate, and aided and abetted in the violation of plaintiffs' rights under the Fourth and Fourteenth Amendments of the United States Constitution.

56.    By reason thereof, the individual defendants have violated  42 U.S.C. §1983 and caused plaintiffs to suffer emotional, physical and economic injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

## SECOND CAUSE OF ACTION

57.    Plaintiffs repeat the allegations contained in paragraphs "1" through "56" above as though stated fully herein.

58.    Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the

9

NYPD.

59.     Defendant had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, use of excessive force, abuse of arrest powers, and other blatant violations of the United States Constitution and the rules and regulations of the NYPD. Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiffs herein.

60.     The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice and custom of utilizing illegal and impermissible searches, arrests and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiffs' arrest.

61.     All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies,

10

usages, practices, procedures and rules of the City and the NYPD, all under the supervision

of ranking officers of the NYPD

      62.    The aforementioned customs, practices, procedures and rules of the

CITY and the NYPD include, but are not limited to, the following unconstitutional practices:

    a.    Failing to supervise, train, instruct and discipline police officers and
        encouraging their misconduct;

    b.    Making arrests without probable cause and/or fabricating or
        withholding evidence to justify arrests;

    c.    Discouraging police officers from reporting the corrupt or unlawful
        acts of other officers;

    d.    Retaliating against officers who report police misconduct; and

    e.    Failing to intervene to prevent the above-mentioned practices when
        such intervention is reasonably available.

      63.    The existence of aforesaid unconstitutional customs and policies may

be inferred from repeated occurrences of similar wrongful conduct, as documented in the

following, non-exhaustive list of civil actions:

    a.    *Thompson v. City of New York,* 10-CV-3603 (ARR) (SMG) (E.D.N.Y.);

    b.    *Lotorto v. City of New York,* 10-CV-1223 (ILG) (JMA) (E.D.N.Y.);

    c.    *Zabala v. City of New York,* 37711/2010 (Sup. Ct., Kings Co.);

    d.    *Ashe v. City of New York,* 09-CV-9696 (GBD) (THK) (S.D.N.Y.);

    e.    *Long v. City of New York,* 09-CV-9216 (AKH) (S.D.N.Y.);

    f.    *Moise v. City of New York,* 09-CV-9855 (DC) (JLC) (S.D.N.Y.)

    g.    *Taylor-Mickens v. City of New York,* 09-CV-7923 (RWS) (SD.N.Y.)

h.  *Carmody* v. *City of New York,* 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 83207

i.  *McMillan* v. *City of New York,* 04-CV-3990 (FB) (RML) (E.D.N.Y.);

j.  *Avent* v. *City of New York,* 04-CV-2451 (CBA) (CLP) (E.D.N.Y.):

k.  *Smith* v. *City of New York,* 04-CV-1045 (RRM) (JMA) (E.D.N.Y.);

l.  *Powers* v. *City of New York,* 04-CV-2246 (NGG) (E.D.N.Y.);

m.  *Dotson* v. *City of New York,* 03-CV-2136 (RMB) (S.D.N.Y.);

n.  *Nonnemann* v. *City of New York,* 02-CV-I0131 (JSR) (AJP) (S.D.N.Y.);

o.  *Richardson* v. *City of New York,* 02-CV-3651 (JG) (CLP) (E.D.N.Y.);

p.  *Barry* v. *New York City Police Department,* 01-CV-10627 (CBM) (S.D.N.Y.);

q.  *Walton v. Safir,* 99-CV-4430 (AKH) (S.D.N.Y.);

r.  *White-Ruiz v. The City of New York,* 93-CV-7233 (DLC) (MHD) (S.D.N.Y.);

s.  *Ariza v. City of New York,* 93-CV-5287 (CPS) (E.D.N.Y.);

64.  In an Order dated November 25, 2009, in *Colon v. City of New York,* 09-

CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this
> court, as well as knowledge of cases in other federal and state
> courts, has revealed anecdotal evidence of repeated, widespread
> falsification by arresting police officers of the New York City
> Police Department. Despite numerous inquiries by commissions
> and strong reported efforts by the present administration --
> through selection of candidates for the police force stressing
> academic and other qualifications, serious training to avoid
> constitutional violations, and strong disciplinary action within
> the department -- there is some evidence of an attitude among
> officers that is sufficiently widespread to constitute a custom or

12

policy by the city approving illegal conduct of the kind now
charged.

65.     Furthermore, more than half the time that the Civilian Complaint
Review Board refers substantiated complaints against officers to the NYPD for disciplinary
action, the NYPD either simply issues a verbal warning or drops the charges altogether.

66.     It is therefore clear that the municipal defendant has not only tolerated,
but actively fostered a lawless atmosphere within the NYPD and that the City of New York
was deliberately indifferent to the risk that the inadequate level of supervision would lead to
the violation of individuals' constitutional rights in general, and caused the violation of
plaintiffs' rights in particular.

67.     By reason thereof, defendant has violated 42 U.S.C. §1983 and caused
plaintiffs to suffer emotional and physical injuries, mental anguish, incarceration and the
deprivation of liberty, and the loss of their constitutional rights.

68.     By reason thereof, defendant has violated  42 U.S.C. §1983 and caused
plaintiffs to suffer emotional, physical and economic injuries, mental anguish, incarceration
and the deprivation of liberty, and the loss of their constitutional rights.

### THIRD CAUSE OF ACTION

69.     Plaintiffs repeat the allegations contained in paragraphs "1" through
"68" above as though stated fully herein.

70.     Plaintiffs were subjected to false imprisonment and malicious
prosecution by the defendants.

71.     At no time did defendants have any legal basis for arresting or

13

imprisoning plaintiffs, or commencing criminal process against them, nor was there any reasonable basis to believe said conduct set forth herein was lawful, reasonable or otherwise appropriate.

72.     The defendants are therefore liable under state law to plaintiffs for false false imprisonment and malicious prosecution.

73.     By reason thereof, defendants have caused plaintiffs to suffer emotional and physical injuries, mental anguish, the loss of their constitutional rights, and unlawful incarceration.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

14

WHEREFORE, the plaintiffs demand judgment against defendants jointly and

severally as follows:

        i.        on causes of action one through three actual and punitive damages in
                    an amount to be determined at trial;

        ii.      statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and
                    New York common law, disbursements, and costs of this action; and

        iii.     such other relief as the Court deems just and proper.

Dated: Brooklyn, New York
       January 10, 2012

                                    REIBMAN & WEINER

                                By:

                                Michael B. Lumer (ML-1947)
                                Attorneys for Plaintiff
                                26 Court Street, Suite 1808
                                Brooklyn, New York 11242
                                (718) 522-1743