UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

MELIEK SANDERS and COREY PHILLIPS,

                        Plaintiffs,                    **ORDER ADOPTING REPORT**
   -against-                                           **AND RECOMMENDATION__**
                                                                       12 CV 113 (PKC) (LB)

THE CITY OF NEW YORK, NATHANIE RAY[1] and
MICHAEL RAKEBRANDT,

                        Defendants.

----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

      Plaintiffs Meliek Sanders and Corey Phillips initiated this civil rights action alleging federal constitutional claims of false arrest, malicious prosecution, denial of fair trial, and unreasonable detention, as well as state law tort claims. Defendants moved for summary judgment on all of Plaintiffs' claims. This matter was referred to the Honorable Lois Bloom, United States Magistrate Judge, for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b).

      In her Report and Recommendation ("Report"), issued on January 7, 2015, Judge Bloom recommended that the Court (1) deny Defendants' motion with respect to Plaintiffs' claims of false arrest, malicious prosecution, and denial of fair trial as to Israel; (2) deny Defendants' motion with respect to Plaintiffs' state law claims of malicious prosecution as to Israel and Defendant City of New York ("City"); (3) grant Defendants' motion with respect to Plaintiffs' state law claim of false arrest as time-barred; (4) dismiss Plaintiffs' claims for unlawful search

---

[1] As noted in the Report, after this action was filed, Defendant Nathanie Ray legally changed his name to Nathanyel Israel. The Court, therefore, refers to this defendant as "Nathanyel Israel" or "Israel."

and abuse of process as abandoned; and (5) grant Defendants' motion as to all of Plaintiffs' claims against Defendant Michael Rakebrandt ("Rakebrandt"), and dismiss him from this action. *See* Dkt. 58 at 37-38, 40. On February 12, 2015, Defendants filed objections to the Report (Dkt. 63), and on February 16, 2015, Plaintiffs filed their response to Defendants' objections. (Dkt. 64.) Plaintiffs have not objected to any portion of the Report. (Dkt. 64 at 2 ("The plaintiffs have elected not to file any objections.").)

## I. STANDARD OF REVIEW

When a party objects to a magistrate judge's report and recommendation, the district court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed.R.Civ.P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). However, "[g]eneral or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." *O'Diah v. Mawhir*, 08-CV-322 (TJM) (DRH), 2011 WL 933846, at *1 (S.D.N.Y. March 16, 2011) (citing *Farid v. Bouey,* 554 F.Supp.2d 301, 306 n. 2 (N.D.N.Y.2008); *Frankel v. N.Y.C.,* 2009 WL 465645 at *2 (S.D.N.Y. Feb. 25, 2009)). "After reviewing the report and recommendation, the Court may 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.'" 28 U.S.C. § 636(b)(1)(C); *O'Diah*, 2011 WL 933846, at *2 (quoting 28 U.S.C. § 636(b)(1)(C)).

Here, Plaintiffs urge the Court to treat Defendants' objections as if they were never filed, either by disregarding them entirely or evaluating the Report under a "clear error" standard. (Dkt. 64 at 3 (citing *Mateo v. Universal Language Corp.*, 13-CV-2495 (NGG), 2014 WL 4983697, at *1 (E.D.N.Y. Oct. 6, 2014) (applying "clear error" standard where *no* objections filed)).) [2] While the circumstances here support Plaintiffs' position—*i.e.*, despite receiving two last-minute extensions of time, with a warning that no further extensions would be granted, Defendants filed their response one day after the deadline, without acknowledging or explaining the delinquency[3]—the Court declines to address this issue, and instead adopts the Report pursuant to a *de novo* standard of review.

**III. Analysis**

Based on its review of the record and the parties' arguments, the Court adopts, in its entirety, Judge Bloom's extremely thorough and well-reasoned Report. The Court rejects Defendants' challenges to the Report, namely, that it: (1) "failed to consider all of the evidence based on the totality of the circumstances[;]" (2) failed to "consider that probable cause to arrest is a low threshold, far below that which is required for conviction[;]" (3) relied solely on the surveillance videotape of the Coney Island Avenue robbery; and (4) improperly relied on certain evidence in finding that the presumption of probable cause arising out of Plaintiffs' indictment could be rebutted at trial. (Dkt. 63 at 2, 6, and 10.)

---

[2] Another basis for applying a "clear error" review standard is that although Defendants have filed objections to the Report, these objections largely repeat the arguments presented in Defendants' initial moving papers. *See O'Diah*, 2011 WL 933846, at *1.

[3] Indeed, in Defendants' apparent haste to file their objections, they included an entire paragraph that had no connection to this case and addressed issues relating to a Report and Recommendation issued by "Magistrate Judge Fox," presumably of the Southern District of New York. (Dkt. 63 at 2.)

Defendants' contentions that the Report failed to consider the totality of the circumstances and applied the correct probable cause standard are patently incorrect. As reflected in Judge Bloom's exhaustive Report, she carefully considered the voluminous record, and applied the correct probable cause standard in determining that there are sufficient factual issues regarding the existence of probable cause to arrest and prosecute Plaintiffs, notwithstanding the eyewitness identifications. *See* Report at 14-31. The exceedingly "low threshold" for probable cause urged by Defendants, which would seemingly permit a finding of probable cause based on an eyewitness identification even where the witness's veracity is questionable, is, as Judge Bloom found, contrary to the law. *Id.* at 15-16. Defendants argue in their objections, as they did in their motion, that "[o]nce Rakebrandt identified Sanders, Detective Israel was under no obligation to compare Sanders['s] actual appearance to the video before making the arrest." (Dkt. 63 at 7 (citing *Panetta v. Crowley,* 460 F.3d 388, 396 (2d Cir. 2006) ("once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury")). However, Defendants' argument misses the point by *assuming* the existence of probable cause based solely on Rakebrandt's identification. As Judge Bloom correctly found, where there are "circumstances [that] raise doubt as to the [eyewitness's] veracity," probable cause may not exist. *See* Report at 15 (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001). Here, the surveillance videotape was one such circumstance that the jury could find undermined the veracity of Rakebrandt's identification and the existence of probable cause.

Defendants also incorrectly argue that Judge Bloom relied solely on the videotape in deciding that a factual issue relating to probable cause was shown. Judge Bloom considered not only the videotape, but other evidence in Israel's possession prior to Plaintiffs' arrests that would

4

have cast doubt on their identities as the perpetrators, such as the physical descriptions of the robbers at both locations, the civilian eyewitnesses' failure to identify Sanders, the limited opportunity Rakebrandt had to view Phillips, the fact that Phillips was the only person in the photo-array shown to Rakebrandt who was wearing a grey hooded sweatshirt (like the robbers), and the scant information in the record about the line-up, coupled with the subsequent determination by the District Attorney's Office that the fillers in the Phillips' line-up were dissimilar in appearance to him. *Id*. at 19-26. Furthermore, had Judge Bloom considered only the videotape, it alone would have been enough to raise sufficient doubts about the veracity of the eyewitnesses who identified Plaintiffs, especially Rakebrandt. As Judge Bloom discussed, the videotape showed, among other things, that the two Coney Island Avenue robbers were roughly the same height and that they were not significantly taller than the other individuals in the store, in contrast to the robbers who would have stood out, given that Sanders is 6'6" tall. *Id*. at 18. As Judge Bloom noted, Defendants' attempt to minimize the weight to be accorded the videotape "ignores the Supreme Court's clear direction in *Scott v. Harris*, 550 U.S. 372, 380-81 (2007), that the Court should consider available video evidence in deciding summary judgment motions in civil rights cases." *Id*. at 16 (internal quotation marks omitted).

Lastly, Defendants argue that the Report improperly relied on evidence suggesting that Israel fabricated a statement by Sanders and police reports about a black Maxima, in deciding whether the presumption of probable cause arising out of Plaintiffs' indictment could be rebutted at trial. Contrary to Defendants' contention, this evidence was not "irrelevant to the plaintiffs' prosecution," and was properly considered by Judge Bloom. Certainly, evidence that Sanders told Israel that he had "some friends who were involved in some robberies, they wear gray hoodies, and a friend took lotto tickets and money" could have caused a grand jury to believe

5

that Sanders knew how the robberies had been committed because he was involved in them and that, by talking about "friends" having committed the robberies, Sanders was attempting to cast suspicion onto fictitious others. Similarly, evidence that a black Maxima, the type of car owned by Phillips, was used as part of the string of robberies that the police believed were connected to the two robberies at issue, could cause a grand jury to believe that Phillips was involved in those robberies as possibly others. Thus, this allegedly fabricated evidence is relevant to a possible rebuttal of probable cause based on the grand jury's indictment of Plaintiffs.

Accordingly, for the reasons set forth in the Report, Defendants' motion for summary judgment is: (1) denied with respect to Plaintiffs' claims of false arrest, malicious prosecution, and denial of fair trial as to Israel; (2) denied with respect to Plaintiffs' state law claims of malicious prosecution as to Israel and the City; (3) granted with respect to Plaintiffs' state law claim of false arrest; (4) granted as to Plaintiffs' claims for unlawful search and abuse of process, which are dismissed; and (5) granted as to all claims against Defendant Michael Rakebrandt, who is hereby dismissed from this case.

SO ORDERED:

  /s/
PAMELA K. CHEN
United States District Judge

Dated: March 30, 2015
      Brooklyn, New York